**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:12-CV-512-MOC-DSC**

| | |
|---|---|
| GLENN BECKWORTH, ) <br> WILLIS BECKWORTH and ) <br> VICKY JUNEAU, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> vs. ) <br> ) <br> MARCEL O. BIZIER, ) <br> ) <br> **Defendant.** ) <br> _____ ) | **MEMORANDUM AND** <br> **RECOMMENDATION** <br> **AND ORDER** |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss or, In the Alternative, Motion to Transfer," Doc. 11, filed October 1, 2012, and the parties' associated briefs and exhibits, Docs. 12 and 13.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Complaint, Doc. 1-1, as true, as we must at this early stage in the proceeding, Plaintiffs and Defendant are the shareholders of Discount Trophy & Co. Inc. ("Discount Trophy"), a Connecticut corporation engaged in the wholesale of trophy and awards components to retailers. Doc. 1-1, ¶¶ 12, 14. Defendant Marcel O. Bizier is the President and

CEO of Discount Trophy, one of its directors, and owner of seventy-five percent of Discount Trophy's shares. Id. ¶¶ 12, 22. Plaintiffs own twenty-five percent of Discount Trophy's shares. Id. ¶ 22. Beckworth is the Vice-President and Chief Operating Officer of Discount Trophy and one of its directors. Id. ¶ 23.

Prior to becoming shareholders of Discount Trophy, Plaintiffs were partners in Plastic Plus Awards, a Louisiana general partnership, that was engaged in the wholesale of trophy and awards components to retailers. Id. ¶¶ 7, 14. By an agreement dated November 20, 2008 (the "Merger Agreement"), Discount Trophy acquired Plastic Plus Awards and Plaintiffs received twenty-five percent of Discount Trophy's shares. Id. Ex. A and B. Plaintiffs allege that they also received twenty percent of the shares in Marco Plastics Industries, Inc. ("MPI"), which also is a Connecticut corporation. Id. ¶¶ 16, 60. Defendant's four children owned all of the shares of MPI prior to the Merger Agreement. They now own eighty percent of MPI's shares. Id. ¶ 57, Ex. A. § 1.1(m). Defendant does not own any shares in MPI. Plaintiffs allege that Defendant "controls the day-to-day affairs" of MPI and "acts as either a de jure or de facto president, chief executive officer and director" of MPI. Id. ¶ 60. Plaintiffs also allege that MPI acts as a conduit for ordering trophy and awards components and reselling them to Discount Trophy. Id. ¶ 16.

Plaintiffs assert seven claims in their Complaint, Doc. 1-1. The Complaint references agreements that were executed either simultaneously with or subsequent to the execution of the Merger Agreement, including a Shareholder Agreement made between Discount Trophy, Defendant and Plaintiffs dated November 20, 2008 (the "Shareholder Agreement," Doc 1-1, Ex. B); an Employment Agreement between Discount Trophy and Beckworth ("Beckworth Employment Agreement," Doc. 1-1, Ex. C); and an Employment Agreement between Discount

Trophy and Defendant ("Bizier Employment Agreement," Doc. 1-1, Ex. C).

On October 1, 2012, Defendant filed this Motion to Dismiss, Doc. 11, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant argues that Plaintiffs lack standing to bring the first, third, fourth and fifth claims directly against Defendant. Defendant argues that these claims may only be brought as a derivative action on behalf of the corporations of which Plaintiffs are shareholders. Defendant contends that since Plaintiffs allege injuries to the corporations, any recoveries would accrue to the corporations and not to them individually. Plaintiffs allege damages based upon a reduction in the value of their stock. Defendant also argues that Plaintiffs fail to state a breach of contract claim against Defendant in the second and sixth claims. Defendant argues that the second claim fails because he is not a party to the contract at issue. He contends that the sixth claim fails because an expression of anticipation to enter into a future contract is not enforceable as a matter of law. Finally, Defendant argues that the Court lacks jurisdiction over Plaintiffs' seventh claim for an inspection of the books and records of Discount Trophy, a Connecticut corporation, because the proper jurisdiction is the Connecticut Superior Court. In the alternative, Defendant requests that if the Court has jurisdiction over the seventh claim, that the action be transferred to the District of Connecticut pursuant to 28 U.S.C. § 1404.

In "Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer," Doc. 12, Plaintiffs argue that Defendant's contention that this action must be brought as a derivative action is based on an incorrect application of the internal affairs doctrine. Plaintiffs assert that Florida and North Carolina law apply in this case and would allow Plaintiffs to bring a direct action against Defendant.

The Motion to Dismiss has been fully briefed and is now ripe for review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains

"enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded

factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles in Iqbal to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

C. **Choice of Law Analysis**

This Court has jurisdiction based upon diversity of citizenship and state substantive law controls. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). As the United States District Court for the Eastern District of North Carolina recently explained,

> To determine which state's law governs, the court relies on North Carolina's choice-of-law rules. See Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4–5, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam); Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under North Carolina law, the substantive law of a corporation's state of incorporation governs suits involving "[the] corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders...." Bluebird Corp. v. Aubin, 188 N.C.App. 671, 680–81, 657 S.E.2d 55, 63 (2008); see N.C. Gen.Stat. § 55–7–47.

Haberland v. Bulkeley, —F.Supp.2d—, No. 5:11-cv-463-D, 2012 WL 4788442, at *8 (September 26, 2012); see also Park v. Am. Circuit Breaker Corp., No. 1:06CV00549, 2008 WL 4596234, at *4 (M.D.N.C. Oct. 14, 2008); Mancinelli v. Momentum Research, Inc., No. 09 CVS 1383, 2012 WL 1810192, at *2 (N.C. Super. Ct. May 17, 2012).

The Restatement of Conflict of Laws further explains the internal affairs doctrine by

offering examples including:

> [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and reclassification of shares.

Mancinelli at *2 (quoting In re PHP Healthcare Corp., 128 F. App'x 839, 843 (3d Cir.2005) (citing Restatement (Second) of Conflict of Laws § 302 cmt. a (1971)).

In this case, Discount Trophy and MPI are both incorporated in Connecticut. Doc. 1-1 ¶¶ 12, 16. Therefore, Connecticut law governs the disputes concerning Discount Trophy's and MPI's internal affairs.

### III. DISCUSSION OF CLAIMS

#### A. Claims Involving Internal Affairs

The Court finds that Plaintiffs' first, third, fourth, fifth and seventh Claims involve "matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders." Bluebird Corp. v. Aubin, 657 S.E.2d 55, 63 (N.C.App.2008). Consequently, Connecticut law applies to these claims.

Under Connecticut law, "[a] shareholder's derivative suit is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation.... It is designed to facilitate holding wrongdoing directors and majority shareholders to account and also to enforce corporate claims against third persons." May v. Coffey, 967 A.2d 495, 501 (Conn. 2009) (citations omitted). "[I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been

7

wronged." Id. at 502. "It is commonly understood that '[a] shareholder-even the sole shareholder-does not have standing to assert claims alleging wrongs to the corporation.'" Smith v. Snyder, 839 A.2d 589, 594 (Conn. 2004) (quoting Jones v. Niagara Frontier Transportation Authority, 836 F.2d 731, 736 *462 2d Cir.1987), cert. denied, 488 U.S. 825, (1988)). Connecticut law does not provide an exception for closely-held corporations. See May, 967 A.2d at 505 (rejecting plaintiffs' claim that they may raise a direct claim because the company is a closely held corporation).

The "central inquiry" in whether a claim is derivative in nature is to whom the alleged injury accrued, or put differently, whether the alleged conduct and the subsequent injury "resulted in a separate and distinct harm to the plaintiffs, or whether [they] harmed the corporation and, accordingly, all shareholders collectively." May, 967 A.2d at 502; see also Smith, 839 A.2d at 594.

In their first claim, Plaintiffs allege that Defendant is personally liable to Discount Trophy and its shareholders because he unilaterally increased his salary and paid himself excessive compensation in violation of the Bizier Employment Agreement and paragraph 12 of the Shareholder Agreement. Doc. 1-1, ¶¶ 34–35. Plaintiffs further allege that Beckworth "believes that there have been additional unlawful payments by Company to [Bizier]." Id. ¶ 36. For this breach of contract claim, Plaintiffs seek to have Defendant "return to Company all sums unlawfully distributed to him,...." Id., First Claim for Relief.

Plaintiffs' third and fourth claims relate to Discount Trophy's acquisition of Barhill Manufacturing, Inc., a Pennsylvania corporation that manufactures trophy and awards components. Plaintiffs allege in their third claim that the Barhill Acquisition was an "unlawful acquisition" pursuant to which Defendant "caused [the] Company to pay in excess of $1 million for

8

[Barhill] when, in fact, [Barhill] had no intrinsic value," causing a "diminution in the value of [Plaintiffs'] shares" of Discount Trophy stock. Id. ¶¶ 41-45, 48. In the fourth claim, Plaintiffs allege that Defendant had a conflict of interest in the Barhill Acquisition because his wife, Barbara King , was the former owner of Barhill and that the transaction caused "a substantial loss to the Company, for which Marcel is liable to the Company and Plaintiffs." Id. ¶¶ 50-55. For both the third and fourth claims, Plaintiffs seek to have "[Defendant] pay to Plaintiffs a sum equal to the diminution in value of their shares caused by the unlawful acquisition of Barhill...." Id., Third Claim for Relief, Fourth Claim for Relief.

In the fifth claim, Plaintiffs allege that Defendant caused MPI to distribute in excess of $2 million to his four children without prorating the distribution as to all shareholders, including Plaintiffs. Id. ¶ 60. For this claim, Plaintiffs seek to have "[Defendant] pay to Plaintiffs as damages for diminution in value of their stock by reason of [Defendant's] unlawful distributions from MPI...." Id., Fifth Claim for Relief.

Plaintiffs' first, third, fourth and fifth claims allege injuries to either Discount Trophy or MPI and not to Plaintiffs individually. Any recovery would accrue to the corporations, and not to Plaintiffs individually. Plaintiffs allege that either Defendant is personally liable to Discount Trophy for damages suffered by the corporation or that they are entitled to damages based on an alleged reduction in stock value. Based upon Connecticut law, these allegations of liability to the corporation and damages based on a reduction in stock value are derivative in nature and not individual claims as the Plaintiffs assert.

Under Connecticut law, individual stockholders lack standing to bring a derivative claim, and therefore dismissal for lack of subject matter jurisdiction is required under Rule 12(b)(1). See

Schumann v. Schumann, No. 3:11cv888, 2012 WL 2016192, at *2 (D. Conn. June 5, 2012) (granting motion to dismiss under Rule 12(b)(1) because plaintiffs had not asserted any injuries separate and distinct from that suffered by corporation or where remedy should belong to shareholders rather than to corporation); Economic Enterprises, Inc. v. T.D. Bank N.A., No. 3:10-cv-157, 2011 WL 446891, at *7 (D. Conn. February 3, 2011)(granting motion to dismiss under Rule 12(b)(1) because plaintiffs had failed to allege any particularized injury that is separate and apart from injuries allegedly suffered by corporation).

The undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to Plaintiffs' first, third, fourth and fifth claims.

Plaintiffs allege in their seventh claim that Beckworth has been denied access to Discount Trophy's books and records. They ask the Court to order Defendant to provide Plaintiffs "as minority shareholders with such documents." Id. ¶¶ 70−74.  Plaintiffs invoke N.C. Gen. Stat. §§ 55-16-02, 55-16-04, and 55-16-20, asserting that they have a right to inspect the books and records of the Discount Trophy.   As stated above, Connecticut law applies here because the shareholders' rights to examine corporate records involve the internal affairs of the corporation.

Under Connecticut law, a shareholder must give the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy. See Conn. Gen. Stat. § 33-946(a)-(b).  Plaintiffs have not pled that they provided Discount Trophy with written notice of their demand at least five business days before the date on which they wanted to inspect and copy the documents, as required by Connecticut law.  Furthermore, Plaintiffs have not pled that they meet the requirements of Section 33-946(d), specifically that: "(1) [their] demand is made in good faith and for a proper purpose; (2) [they] describe[] with

reasonable particularity [their] purpose and the records [they] desire to inspect; and (3) the records are directly connected with [their] purpose." A court may order inspection only if a shareholder has complied with these requirements. See Conn. Gen. Stat. § 33-948(a)-(b). Plaintiffs have not complied. Therefore, Plaintiffs have failed to state a claim and the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u> with respect to Plaintiffs' seventh claim.

### B. <u>Breach of Contract Claims</u>

In their second claim, Plaintiffs allege that Defendant unilaterally reduced Beckworth's salary "by the sum of $40,000.00 all in violation of the [Beckworth] Employment Agreement." <u>Id.</u> ¶ 39. For this claim, Plaintiffs seek to have "[Defendant] pay to [Beckworth] the amount by which he unlawfully reduced [Beckworth's] compensation." <u>Id.</u>, Second Claim for Relief. The Beckworth Employment Agreement is a contract between Beckworth and Discount Trophy. Defendant is not a party to the Agreement. See Doc. 1, Ex. C, Preamble ("This Agreement, made and entered into ...by and between Discount Trophy & Co., Inc., a Connecticut corporation...and Glenn Beckworth"). The Beckworth Employment Agreement contains a choice of law provision stating that the Agreement will be governed by Florida Law. <u>Id.</u> ¶ 12.

Whether this claim is governed by Florida, Connecticut or North Carolina law, a breach of contract claim may only be brought against a party to the agreement. See <u>Marlite, Inc. v. Eckenrod</u>, No. 10-23641, 2012 WL 3620024, at *10 (S.D. Fla. July 13, 2012) ("[T]he well-established principle in Florida [is] that a breach of contract claim may only be maintained against a party to the contract. . . [A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms.") (internal quotation marks and citation omitted)); <u>FCM</u>

Group, Inc. v. Miller, 17 A.3d 40, 54 (Conn. 2011) (stating that it is "a general principle so fundamental that it rarely receives mention in case law or commentary . . . that only parties to contracts are liable for their breach."); Bryant v. Wells Fargo Bank, N.A., 861 F.Supp.2d 646, 650 (E.D.N.C. 2012)("Under North Carolina law, a defendant who 'was not a party to [a] contract ... cannot be held liable for any breach" of that contract." (quoting Canady v. Mann, 419 S.E.2d 597, 601 (N.C. App. 1992))). Because Defendant is not a party to the Beckworth Employment Agreement, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to Plaintiffs' second claim.

In their sixth claim, Plaintiffs allege that Defendant breached the Shareholder Agreement because he has "refused" to sell his Discount Trophy shares to Beckworth. The provision Plaintiffs rely on states:

> It is anticipated that within three (3) years Beckworth will purchase the shares of Bizier at a mutually acceptable price, or the Company will be put up for sale with the shares of all shareholders collectively sold to the highest bidder.

Doc.1, Ex. B, ¶ 8. Plaintiffs request that the Court appoint a receiver to conduct a sale of the Company pursuant to the terms of the Shareholder Agreement. Id., Sixth Claim for Relief.

This provision cannot be enforced by a breach of contract claim under the laws of Florida, Connecticut or North Carolina because of the well-settled principle that expressions of desire, hope or a promise to enter into a future contract are not the basis for such a claim. See Peters v. Bower, 63 So. 2d 629, 629 (Fla. 1953) (provision that states an "intention" of performance "on or before two years after date" does not amount to an enforceable contract); Brown v. Dobry, 311 So. 2d 159, 160 (Fla. Dist. Ct. App. 1975) ("In order for a contract to be subject to specific performance, it must appear from the writing constituting the contract that the obligations of the

parties with respect to conditions of the contract and actions to be taken by the parties are clear, definite and certain."); Cohen v. Amerifirst Bank, 537 So. 2d 1108, 1110 n.2 (Fla. Dist. Ct. App. 1989)( "Statements of future intentions, or an agreement to agree in the future, do not give rise to an enforceable contract."); Geary v. Wenworth Labs., Inc., 760 A.2d 969, 972 (Conn. App. 2000) ("[A]n agreement must be definite and certain as to its terms and requirements.... So long as any essential matters are left open for further consideration, the contract is not complete."); Carolina Cable & Connector v. R&E Electronics, Inc., 473 S.E.2d 376, 377–78 (N.C. App. 1996) ("'[O]ne of the elements of a valid contract is a promise, which has been defined as an assurance that a thing will or will not be done. However, the mere expression of an intention or desire is not a promise." (quoting Bowman v. Hill, 262 S.E.2d 376, 377 (N.C. App. 1980))).

The undersigned finds that paragraph 8 of the Shareholder Agreement expresses anticipation that Defendant and Beckworth may enter into a future contract for the sale of Defendant's shares to Beckworth at an unspecified date and for an unspecified price. The Shareholder Agreement sets forth no agreement that Defendant will sell his shares to Beckworth, nor does it impose any obligation on Beckworth to purchase the shares in the absence of any further agreement. An expression of a future possibility falls far short of creating an enforceable contract. See Cohen, 537 So. 2d at 1110 n.2 ("Statements of future intentions, or an agreement to agree in the future, do not give rise to an enforceable contract."); see also Borden v. Skinner Chuck Co., 150 A.2d 607, 610 (Conn. Super. Ct. 1958) ("It is basic, however, that there must be an offer . . . . A mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer." (citing 1 Williston, Contracts § 26 (rev. ed. 1937))). The expression of an anticipated sale of Defendant's

shares is insufficient to form a contract for the sale of those shares. The undersigned finds that Plaintiffs have failed to state a claim for breach of contract. Consequently, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to Plaintiffs' sixth claim.

## IV. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that on "Defendant's Motion to Dismiss or, In the Alternative, Motion to Transfer," Doc. 11, be **GRANTED** and Plaintiffs' Complaint be **DISMISSED WITH PREJUDICE**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416

F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: December 19, 2012

David S. Cayer
United States Magistrate Judge